IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PAUL O'BRIEN,**

    **Plaintiff,**

    v.                               **CIVIL NO. 1:25-CV-63**
                                                                **(KLEEH)**

**CODY C. MAYLE,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

Pending before the Court is a partial motion to dismiss. For the reasons discussed below, the motion is granted in part and denied in part.

### I. INTRODUCTION AND PROCEDURAL HISTORY

On July 10, 2025, Plaintiff Paul O'Brien ("Plaintiff") filed a complaint against Defendant Cody C. Mayle ("Defendant"), a Deputy Sheriff in Taylor County, West Virginia. See ECF No. 1. Plaintiff asserts the following causes of action, which stem from his interaction with Defendant on July 12, 2023:

- (Count One) Unlawful Detainment – 42 U.S.C. § 1983;

- (Count Two) Unlawful Search and Seizure – 42 U.S.C. § 1983;

- (Count Three) Excessive Force – 42 U.S.C. § 1983;

- (Count Four) First Amendment, Retaliatory Arrest - 42 U.S.C. § 1983;

- (Count Five) Battery; and

- (Count Six) Assault.

Defendant is sued in his individual capacity only. Id. ¶ 3. On August 13, 2025, Defendant filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See ECF No. 3. The motion is fully briefed and ripe for review.

## II. FACTS

The following facts are taken from the complaint. For purposes of deciding the motion, the Court assumes that they are true.

On or about the morning of July 12, 2023, Defendant arrived at Plaintiff's home to discuss one of Plaintiff's Facebook posts. Compl., ECF No. 1, at ¶¶ 4, 11. Specifically, Plaintiff's post had stated that he wished he had a firecracker to set off to startle a deputy who had parked across the street from his home. Id. ¶ 12. Defendant did not have a search warrant or an arrest warrant when he arrived at Plaintiff's home. Id. ¶¶ 5-6. Defendant initially spoke with Plaintiff's stepfather and asked him to bring Plaintiff outside. Id. ¶ 7. Plaintiff agreed to speak with Defendant and proceeded to have a conversation with him in the driveway. Id. ¶¶ 8-9.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

Plaintiff and Defendant discussed the Facebook post and an issue that Plaintiff was having with one of the deputies. Id. ¶¶ 13-15. When questioned about the post, Plaintiff stated that he was exercising his freedom of speech. Id. ¶ 16. Defendant told Plaintiff that he could be written up for the post, and Plaintiff responded by telling Defendant to write him up. Id. ¶¶ 17-18. Defendant told Plaintiff that he would "gladly do that for [him]." Id. ¶ 19.

Plaintiff then told Defendant that he (Plaintiff) needed to go to work, and he began walking to his vehicle. Id. ¶¶ 20-21. Defendant said to Plaintiff, "Hold on, I'm talking to you. Do not walk away from me. Get back over here." Id. ¶ 22. Plaintiff cursed at Defendant, who then ordered Plaintiff to turn around, grabbed Plaintiff's arm, detained him, and arrested him. Id. ¶¶ 24-27. When Plaintiff asked Defendant why he was being arrested, Defendant told him that he was being arrested for threatening an officer. Id. ¶¶ 30-31. Plaintiff spent two days in jail and was charged with obstructing an officer. Id. ¶¶ 32-34. Ultimately, the State of West Virginia voluntarily dismissed the charge against Plaintiff. Id. ¶ 35.

### III. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which

relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citations omitted).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969) (citation omitted).

## IV. DISCUSSION

Defendant moves to dismiss Counts One, Three, Five, and Six, along with any state constitutional violations asserted in the complaint. Plaintiff has conceded that dismissal of Count One is appropriate and clarified that he is not asserting any state constitutional violations. For the reasons discussed herein, the Court grants the motion to dismiss with respect to Count Six and denies it with respect to Counts Three and Five.

**A.  Excessive Force (Count Three)**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). It "may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (citation omitted). The protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations

omitted). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted).

The test to determine whether an officer is entitled to qualified immunity is two-fold: the Court must determine "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (citation omitted). The United States Court of Appeals for the Fourth Circuit applies a "split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citation omitted). The Court can address either prong first. Pearson, 555 U.S. at 236.

"For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (quotation marks and citation omitted). The "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. Graham v. Conner, 490 U.S. 386, 397 (1989). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396–97. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citation and internal quotation marks omitted). As the Supreme Court has explained,

> "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. (citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

For Fourth Amendment claims of excessive force, "the severity of injury resulting from the force used has always been but one consideration in determining whether force was excessive." Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (citation and internal quotation marks omitted). While officers will not be "subject to § 1983 liability . . . for every push and shove they make," Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988) (internal quotation marks omitted), they are also not "absolve[d]" of liability merely because "their conduct, however unreasonable, only result[ed] in de minimis injuries." Smith, 634 F. App'x at 917 (citation omitted). After all, the question is "whether the totality of the circumstances justified a particular sort of search or seizure." Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

Here, Defendant argues that he is entitled to qualified immunity with respect to the claim of excessive force, and Plaintiff disagrees. According to the complaint, Plaintiff had previously posted on Facebook that he wished he had a firecracker to set off to startle a deputy who had parked across the street from his home. Compl., ECF No. 1, at ¶ 12. Defendant and Plaintiff then had a conversation at Plaintiff's home. Id. ¶¶ 8-9. When Plaintiff attempted to leave, Defendant said to Plaintiff, "Hold on, I'm talking to you. Do not walk away from me. Get back over here." Id. ¶¶ 20-22. Plaintiff cursed at Defendant, who then

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

ordered Plaintiff to turn around, grabbed Plaintiff's arm, detained him, and arrested him. Id. ¶¶ 24-27. When Plaintiff asked Defendant why he was being arrested, Defendant told him that he was being arrested for threatening an officer. Id. ¶¶ 30-31.

As pled, Plaintiff has met his burden with respect to the first prong of the qualified immunity test. The facts asserted in the complaint do not indicate that Plaintiff had committed, was committing, or was about to commit an offense. See United States v. Dickerson, 27 F. App'x 236, 242 (4th Cir. 2001) ("Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"). Defendant, therefore, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution by using force — grabbing his arm and handcuffing him — to effectuate an arrest for which there was no probable cause.

Defendant bears the burden of proof with respect to the second prong of the test: "whether the right was clearly established at the time of the violation." Defendant's briefing, however, addresses only the first prong. Defendant argues only that Plaintiff did not sufficiently allege a constitutional violation.

See Memo., ECF No. 3-1, at 6-8.  Accordingly, Defendant has not met his burden to show that the alleged constitutional violation — an arrest without probable cause under the circumstances asserted here — was not clearly established at the time of the violation.  Accordingly, at this stage and based on the arguments presented, the Court finds that Plaintiff's right to be free from the unconstitutional arrest asserted here was clearly established at the time it took place.  It would be clear to a reasonable officer that Plaintiff had not engaged in activity that warranted an arrest.  Defendant's actions, as pled in the complaint, which included grabbing Plaintiff's arm and arresting him without probable cause, were objectively unreasonable.  The Court, at this stage, finds that Defendant is not entitled to qualified immunity and denies the motion to dismiss with respect to Count Three.

    **B.    Battery (Count Five)**

    In West Virginia, a person is liable for battery if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004).  Generally, a law enforcement officer "engaged in an arrest is afforded a privilege

that precludes a battery claim." Weigle v. Pifer, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (citation omitted). An officer's privilege, however, is not absolute. Id. at 777. Here, Defendant argues that he was privileged in making physical contact with the Plaintiff. Plaintiff argues that privilege does not apply because Defendant did not have probable cause to effectuate the arrest.

As discussed above with respect to qualified immunity, assuming that the facts in the complaint are true, a prudent person would not believe that Plaintiff had committed, was committing, or was about to commit an offense. Defendant did not have probable cause to arrest Plaintiff, so his conduct was not privileged. Grabbing a person's arm and detaining him is an offensive contact. Defendant intended to cause the offensive contact, and the intended offensive contact resulted, so Plaintiff has stated a viable claim for battery. The Court denies the motion to dismiss with respect to Count Five.

### C. Assault (Count Six)

In West Virginia, a person is liable for assault if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "the other is thereby put in such imminent apprehension." Stanley, 602 S.E.2d at 495. "If the plaintiff never perceived the harmful or offensive contact before

it happened, no assault occurred." Crawford v. Daniels, No. 2:23-cv-00585, 2024 WL 1895105, at *7 (S.D.W. Va. Apr. 30, 2024) (citation omitted). Defendant argues that Plaintiff failed to plead facts sufficient to establish his assault claim because he alleges only a conclusory allegation. Plaintiff argues that his excessive force allegation is sufficient to support his assault claim.

The conduct attributed to the alleged assault is identical to the conduct attributed to the alleged battery. Importantly, however, Plaintiff does not allege that he was placed in imminent apprehension of an offensive or harmful contact, nor does he plead any facts showing that he feared that Defendant would physically contact him. Because the complaint offers only a legal assertion that "[D]efendant committed an assault upon the Plaintiff," Compl., ECF No. 1, at ¶ 79, the Court finds that Plaintiff has failed to plead facts sufficient to state a claim of assault. The Court grants Defendant's motion to dismiss with respect to Count Six.

D. **Leave to Amend**

At this stage, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15.01 of the Local Rules of Civil Procedure

requires a party requesting leave to amend to attach "a signed copy of the proposed amended pleading." L.R. Civ. P. 15.01.

In Plaintiff's response, he asks the Court to, in the alternative, grant him leave to amend his complaint. See Resp., ECF No. 7, at 13. Plaintiff did not file a separate motion and did not attach a signed copy of the proposed amending pleading. He has, therefore, failed to comply with Local Rule 15.01. Because Plaintiff failed to comply with the Local Rules, the Court denies his request for leave to amend.

### V.  CONCLUSION

For the reasons stated, the Court **ORDERS** as follows:

- The partial motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 3];

- The motion is **GRANTED** with respect to Counts One and Six;

- Counts One and Six are **DISMISSED**;

- The motion is **DENIED** with respect to Counts Three and Five;

- Defendant's motion is **DENIED AS MOOT** as it relates to state constitutional claims; and

- Plaintiff's request for leave to amend the complaint is **DENIED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PARTIAL MOTION TO DISMISS [ECF NO. 3]**

DATED: November 18, 2025

*/s/ Thomas S. Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA